NO. 07-06-0297-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



OCTOBER 8, 2007


______________________________



MICHAEL ERIC JONES, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 399TH DISTRICT COURT OF BEXAR COUNTY;



NO. 2005CR4158; HONORABLE JUANITA VASQUEZ-GARDNER, JUDGE


_______________________________




Before CAMPBELL and HANCOCK and PIRTLE, JJ.

OPINION


 Appellant, Michael Eric Jones, was convicted by a jury of the offense of aggravated
robbery and the same jury, after finding the enhancement portion of the indictment true,
sentenced appellant to 52 years in the Texas Department of Criminal Justice-Institutional
Division. Appellant attacks the judgment of the trial court through four issues claiming error
in that: 1) the trial court ruled that he was only entitled to have new counsel appointed one
time, 2) the trial court refused to allow him to hire counsel of his choice, 3) trial counsel was
ineffective, and 4) the trial court refused to instruct the jury on the lesser included offense
of theft. We reverse.

Factual and Procedural Background

 On October 26, 2004, 81 year old Anna Clark, the victim, was waiting at a bus stop
in San Antonio. While waiting, someone came from behind Clark and snatched the purse
off her shoulder. As a result, Clark's eyeglasses became dislodged from her face and she
began to fall. Clark grabbed a grocery cart she had brought from the grocery store for
support and, by the time she looked up, all she saw was the back of the perpetrator. 

 At the same time these events were unfolding, Eduardo Camargo and his wife,
Blanca, were passing by the intersection next to the bus stop. Eduardo observed appellant
walking toward Clark from the rear. Eduardo testified that he observed appellant pull the
purse off of Clark and flee. He followed appellant and watched him enter a red Dodge
Neon automobile and sped off. Eduardo followed the red Neon and Blanca wrote down
the license plate number and called 911 to report what they had observed. The Camargos
eventually lost sight of the red Neon and returned to the bus stop. Blanca gave the
information about the red Dodge Neon to the police at the bus stop. The police checked
the license plate number that Blanca reported and it was to shown to belong on a red
Dodge Neon belonging to Esmeralda C. Vasquez. The records also indicated that, four
days before the offense in question, a male driver matching the general description of the
perpetrator was ticketed in the Neon. Detective Bryan Taylor prepared a photo array,
including a picture of appellant, and showed it to Eduardo. Eduardo immediately identified
appellant's photo as the man that took the purse and fled in the red Neon. Appellant was
then arrested and subsequently indicted for the offense of aggravated robbery.

 After appellant's arrest, on January 23, 2005, he was appointed an attorney. On
July 18, 2005, appellant requested that the court discharge his attorney and appoint him
a new attorney. The court complied with the request with the admonition that the court
would only appoint a new attorney one time. On October 17, 2005, appellant was
appointed another attorney, who served throughout the trial. There was no complaint in
the record about the new attorney, until May 2, 2006, the day the case was set for trial. On
that date, at a pretrial hearing, before bringing in the jury panel, appellant for the first time
complained about his second attorney and requested the court appoint another attorney. 
The trial court refused to do so. Appellant then asked if he could hire an attorney. The trial
court said he could, however, the trial was going to proceed as scheduled. The trial
proceeded to verdict, the jury found the appellant guilty of aggravated robbery and this
appeal follows. We will first address the issue of the lesser included charge instruction. 

Lesser Included Offense


 Appellant's third issue contends that the trial court erred by refusing to give a lesser
included charge on the offense of theft. (1) Appellant requested the lesser included charge
in a timely manner and the same was refused by the trial court. Therefore, if the trial court
erred, the appellant need only show that the error was one that is "calculated to injure the
rights of the defendant." Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). 
When this test is applied, the cogent inquiry is did the error, if any, affect the substantial
rights of the appellant. Tex. R. App. P. 44.2(b). More recently, the Court of Criminal
Appeals has stated that a conviction should not be overturned and reversed unless, from
an examination of the entire record, we can conclude that the error may have had
substantial influence on the outcome of the proceeding. Burnett v. State, 88 S.W.3d 633,
637 (Tex.Crim.App. 2002). 

 To constitute a lesser included offense, an offense must 1) be established by proof
of the same or less than all of the facts required to establish the commission of the offense
charged; 2) differ from the offense charged only in the respect that a less serious injury or
risk of injury to the same person, property, or public interest suffices to establish its
commission; 3) differ from the offense charged only in the respect that a less culpable
mental state suffices to establish its commission; or 4) consist of an attempt to commit the
offense charged or an otherwise included offense. Tex. Code Crim. Proc. Ann. art. 37.09
(Vernon Supp. 2005). The State concedes that theft is a lesser included offense of
robbery. See Earls v. State, 707 S.W.2d 82, 84 (Tex.Crim.App. 1986). Further, as alleged
in the indictment, the element that elevates this case to aggravated status is the age of the
victim coupled with actions that threaten or place the victim in fear of imminent bodily injury
or death. See Tex. Penal Code Ann. § 29.03(a)(3)(A) (Vernon 2003). (2) Therefore, it
follows that theft is a lesser included offense of aggravated robbery, as alleged in the
indictment. See Hall v. State, 225 S.W.3d 524, 535 (Tex.Crim.App. 2007) (holding that
the "pleadings approach" is the first step in determining whether a party may be entitled to
a lesser included offense instruction). The second step of the analysis requires a review
of the evidence admitted at trial to determine if the appellant is entitled to the lesser
included instruction. Id. at 536. Anything more than a scintilla of evidence may be
sufficient to entitle appellant to the requested charge. Id. The evidence need only establish
the lesser included offense as a valid, rational alternative to the charged offense. Id.

 In the present case, the record discloses that the issue of threatening or placing the
victim in fear of imminent bodily injury or death was hotly contested. Clark testified that she
never saw the appellant until he was running away. Further, she testified that she was
afraid of falling and possibly breaking a bone. Her testimony about being afraid was
capable of differing interpretations. On the one hand she indicated that she had a general
fear of falling and breaking a bone, which was the reason given for having the shopping
cart for stability. Alternatively, she could have been saying that she was afraid of falling
because of the purse being snatched from her shoulder. Camargo testified that, when he
returned to the scene, Clark was scared and was shaking. However, Clark's fear after the
fact is not conclusive evidence that she was placed in fear of imminent bodily injury at the
time of the taking of the purse. Rather, the testimony and the inferences that a jury may
make from that testimony is a question for the jury to decide under the appropriate
instruction from the court. The initial police officer on the scene indicated that the offense
was one of "purse snatching." After reviewing the record, it appears there was at least
more than a scintilla of evidence to support the theory that appellant was guilty of only the
offense of theft. Accordingly, appellant was entitled to the lesser included offense
instruction of theft. Id. 

 We now turn to the issue of harm. As stated above, the standard of review for such
a situation is that we look at the entire record to determine if the error affected appellant's
substantial rights. Tex. R. App. P. 44.2(b). The harm from denying the lesser offense
instruction stems from the potential to place the jury in the dilemma of convicting for a
greater offense in which the jury has reasonable doubt or releasing entirely from criminal
liability a person the jury is convinced is a wrongdoer. Masterson v. State, 155 S.W.3d
167, 171 (Tex.Crim.App. 2005). The lesser offense is an available compromise. Id. In the
present case, appellant was sentenced under the term provided for aggravated robbery,
a first degree felony. § 29.03(b). A first degree felony carries a punishment range from
five to 99 years or life in prison. § 12.32. With the enhancement provision found true by
the jury the punishment range is from 15 to 99 years or life imprisonment. § 12.42(c)(1). 
Punishment on the requested lesser included offense of theft is determined by the value
of the property taken. § 31.03(e)(2)-(3). Those offenses carry a term of confinement in jail
for six months and one year, respectively. §§ 12.22, 12.21. With the enhancement
paragraph found true by the jury, the punishment range for a Class A misdemeanor is 90
days to one year confinement. § 12.43(a). For a Class B misdemeanor, with the
enhancement paragraph, the applicable punishment range is 30 to 180 days confinement.
§ 12.43(b). In this case, the appellant was sentenced to serve a term of confinement of
52 years in the Texas Department of Criminal Justice. Under these facts and with the
issue of fear to Clark being the paramount contested issue, the refusal to grant the lesser
included instruction did have a substantial influence on the outcome of the case. Burnett,
88 S.W.3d at 637. The jury was denied the opportunity to evaluate the appellant's conduct
in light of the lesser criminal offense. Instead, they were faced with the decision to release
a person who had taken advantage of an elderly individual or to convict him of aggravated
robbery. This is the exact moral dilemma for a jury to which Masterson spoke. Masterson,
155 S.W.3d at 171. Accordingly, the decision to deny the lesser included instruction was
reversible error.

 Having concluded that the trial court committed reversible error in connection with
the lesser included offense instruction, we need not address the appellant's remaining
issues. Tex. R. App. P. 47.1.

Conclusion


 Having determined that the trial court committed reversible error, we reverse the
judgment of the trial court and remand the case for a new trial.

 

 Mackey K. Hancock

 Justice






 

Publish. 
1. At trial, the request was for the offense of theft of a person, which we have
construed to mean theft.
2. Further reference to the Texas Penal Code will be by reference to § ___.



="WPFloatStyle">' );
 document.write( WPFootnote1 );
 document.write( '
Close' );
 document.write( '' );
 }


          A new district judge was appointed in March 2008. He convened a hearing in the
case on April 7. There, the parties stated their positions on the merits and agreed to
submit briefs. The court indicated it would review the briefs before deciding to review the
record. There was no objection. The court denied the motion to dismiss of R.T. and M.T.
by order of June 3.
          In an order signed August 6, 2008, the district court terminated the parental rights
of R.T. and M.T. and appointed the Department permanent managing conservator of
T.D.S.T. and C.T. The order recites that the court inter alia reviewed the reporter’s record
of the November 28, 2006, hearing and the clerk’s record before reaching its decision. The
order adopted the material terms of the associate judge’s order. R.T. and M.T. then
appealed to this court. 
Discussion 
          Through their first and second issues R.T. and M.T. argue the district court erred by
failing to dismiss the case


 because a final order was not rendered within the time limits of
Family Code section 263.401. 
          As it existed at the time applicable to the underlying case, section 263.401 in
pertinent part required that unless: 
[T]he court has rendered a final order...on the first Monday after the first
anniversary of the date the court rendered a temporary order appointing the
department as temporary managing conservator, the court shall dismiss the
suit affecting the parent-child relationship filed by the department that
requests termination of the parent-child relationship or requests that the
department be named conservator of the child.
 
Tex. Fam. Code Ann. § 263.401(a). 
          On the record, at the conclusion of the November 28, 2006, hearing the associate
judge stated:
The Court finds the evidence sufficient, does terminate the parental rights of
[M.T. and R.T.] to the children [T.D.S.T. and C.T.]. Appoints the Department
of Family and Protective Services as permanent managing conservator of
both children. Sets the initial placement review matter in this--initial
placement review hearing in this matter on Thursday, March 15, 2007 at 11
a.m. Will not order either parent to pay child support pending adoption. That
concludes this hearing. 
          According to R.T. and M.T., the rendition by the associate judge terminating the
parent-child relationship was not a final order because it was timely appealed to the district
court for trial de novo. And the district court erred, they further argue, by not dismissing
the case when it failed to render a final order within the one year period of section
263.401(a).
          To analyze the issue, we must necessarily consider the meaning of the words
“render” and “final order” as applied by section 263.401 and their application to the
rendition by the associate judge. The term “render” is defined in the Family Code. It
“means the pronouncement by a judge of the court’s ruling on a matter. The
pronouncement may be made orally in the presence of the court reporter or in writing,
including on the court’s docket sheet or by a separate written instrument.” Tex. Fam. Code
Ann. § 101.026. We are guided in our understanding of “final order” by the canon of
construction that when words are given a technical or particular meaning, the court should
construe them accordingly. Tex. Gov’t Code Ann. § 311.011(b) (Vernon 2005). See
Transport Ins. Co. v. Faircloth, 898 S.W.2d 269, 274 (Tex. 1995) (court is bound to
construe statutory terms, in this case the DTPA, according to their statutory definitions).
Section 263.401 then gave its own particular meaning to the term “final order”:
For purposes of this section, a final order is an order that:

(1) requires that a child be returned to the child’s parent;

(2) names a relative of the child or another person as the child’s managing
conservator;

(3) without terminating the parent-child relationship, appoints the department
as the managing conservator of the child; or

(4) terminates the parent-child relationship and appoints a relative of the
child, another suitable person, or the department as managing conservator
of the child.
Tex. Fam. Code Ann. § 263.401(d). 
          Concerning the role of the associate judge in the underlying proceedings, the
version of the Family Code in place at the time allowed a district judge to appoint a full-time
or part-time associate judge to hear matters in a suit affecting the parent-child relationship. 
Tex. Fam. Code Ann. § 201.001. An associate judge could conduct a hearing and inter
alia make findings of fact and conclusions of law, and “recommend an order to be rendered
in a case.” Tex. Fam. Code Ann. § 201.007(a)(1), (8), (9), & (10). Following a hearing, the
associate judge was required to send a report of the proceeding, including any proposed
order and other papers related to the case, to the referring court. Tex. Fam. Code Ann.
§ 201.011(e). The report could contain the associate judge’s findings, conclusions, or
recommendations including a proposed order. Tex. Fam. Code Ann. § 201.011(a).


 
Following a hearing, a party could “appeal an associate judge’s report to the referring court
by filing notice of appeal within three days of receiving notice of the substance of the
report.” Tex. Fam. Code Ann. § 201.015(a).


 Here, R.T. and M.T. availed themselves of
this right. Under such circumstance, the Family Code further provided that during the
pendency of the appeal of “the associate judge’s report, including any proposed order,” to
the district court, “the decisions and recommendations of the associate judge” remained
in full force and effect and were enforceable as an order of the district court. Tex. Fam.
Code Ann. § 201.013(a).


 We find persuasive the reasoning and result in Garza v. Tex.
Dep’t of Family & Protective Servs. where the Austin Court of Appeals found an order of
an associate judge met the requirements of a final order under section 263.401. 212
S.W.3d 373 (Tex.App.–Austin 2006, no pet.).
          Applying these precepts to the facts at bar, we find the district court did not err by
refusing to dismiss the case for the claimed transgression of section 263.401(a). On
November 28, 2006, the associate judge rendered an order terminating the parent-child
relationship and appointing the Department permanent managing conservator of T.D.S.T.
and C.T. The rendition met the requirements of a final order under section 263.401(d). 
See Tex. Fam. Code Ann. § 263.401(d).


 The rendition had the force of an order of the
district court during the pendency of appeal to the district court. In short, within the one-year period specified by section 263.401(a) a final order was rendered. The first and
second issues of R.T. and M.T. are overruled. 
          In their third issue, R.T. and M.T. argue the judgment of the district court following
trial de novo is void because it was rendered out of term without an extension. R.T. and
M.T. did not raise this argument in the trial court in their statement of points. Tex. Fam.
Code Ann. § 263.405(b). Generally we are barred from considering an issue not raised in
a timely filed statement of points. Tex. Fam. Code Ann. § 263.405(i). However, the issue
may constitute a challenge to the trial court’s jurisdiction to render judgment


 and thus to
this court’s jurisdiction to consider the merits of the appeal,


 so we will address it. 
          “Term of court” means the period fixed by law during which a court may be in
session to hear cases and transact judicial business. Ex parte Williams, 704 S.W.2d 773,
787 (Tex.Crim.App. 1986). The terms of the 100th district court begin in Childress County
on the first Mondays in May and December. Tex. Gov’t Code Ann. § 24.202 (Vernon
2004). The court’s terms are continuous, each term continuing until the beginning of the
next succeeding term. Tex. Gov’t Code Ann. § 24.012(b) (Vernon 2004). As for cases
involving judicial actions taken in succeeding terms of court, Rule of Civil Procedure 330(i)
provides in part:
If a case or other matter is on trial, or in the process of hearing when the
term of court expires, such trial, hearing or other matter may be proceeded
with at the next or any subsequent term of court and no motion or plea shall
be considered as waived or overruled, because not acted upon at the term
of court at which it was filed, but may be acted upon at any time the judge
may fix or at which it may have been postponed or continued by agreement
of the parties with leave of the court....
Tex. R. Civ. P. 330(i). In Lloyd’s of London v. Walker, 716 S.W.2d 99 (Tex.App.–Dallas
1986, writ ref’d n.r.e.) the appellant asserted points of error grounded on a six-year delay
between trial and rendition of judgment. In overruling the points, the court noted the plain
language of Rule 330(i). “[T]he rule itself contains no time limit in which a court must act
in rendering judgment–to the contrary, it may act at the next or any subsequent term.” Id.
at 101 (emphasis in original). 
          R.T. and M.T. present a contrary interpretation of Rule 330(i), relying on Shaw &
Estes v. Texas Consol. Oils, 299 S.W.2d 307 (Tex.Civ.App.–Galveston 1957, writ ref’d
n.r.e.) and Turner v. Texas Sportservice, Inc., 312 S.W.2d 388 (Tex.Civ.App.–San Antonio
1958, writ ref’d n.r.e.). But Shaw and Turner applied Rule 330(i)


 prior to its 1961
amendment. Shaw, 299 S.W.2d at 310-11; Turner, 312 S.W.2d at 389-90. As the current
language of the rule and the commentary make clear, unfinished cases or other matters
may be disposed of at “the next or any subsequent term of court.” Tex. R. Civ. P. Ann.
330, General Commentary–1966 Amendment (Vernon 1977). As the commentary further
notes, “It follows that an extension order under [former Article 1923, V.A.C.S.] is no longer
required at any subsequent term of court.” Id. See also 1 Roy W. McDonald & Elaine A.
Grafton Carlson, Texas Civil Practice: Courts § 3:110[c] (2d ed. 2004) (noting that under
current rules, “it appears unnecessary to discuss the practice of extending the term of a
district court”). We conclude the district court did not lack jurisdiction to take action in this
case during a subsequent term. We overrule the third issue of R.T. and M.T. 
          By their fourth issue, R.T. and M.T. argue that because the district court did not
render judgment within ninety days of taking the case under advisement, they suffered
substantial prejudice and harm. This argument is not couched as a jurisdictional challenge
and was not raised in the statement of points R.T. and M.T. filed in the trial court. We are,
therefore, precluded by law from considering it on appeal. Tex. Fam. Code Ann. §
263.405(i); In re J.O.A., 262 S.W.3d 7, 16 (Tex.App.–Amarillo 2008, pet. granted). The
issue is overruled. 
 
          Having overruled each of the issues presented by R.T. and M.T., we affirm the
judgment of the trial court.
 
                                                                           James T. Campbell 

                                                                                      Justice